UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| DAWN ALLEY, for herself and on behalf of the estate of KH, a deceased minor,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF UTAH, CANYONS SCHOOL DISTRICT, JORDAN HIGH SCHOOL, ROBERTO JIMENEZ, JASON LONG, BRUCE ESCHLER, KELCEY KEMP, CRYSTAL CONNORS, JASON HOOPS, and DOES 1–5,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART [33] DEFENDANTS' MOTION TO DISMISS**<br><br>Case No. 2:25-cv-00688-DBB-JCB<br><br>District Judge David Barlow |

Before the court is Defendants State of Utah, Canyons School District ("Canyons"), Jordan High School ("Jordan"), Roberto Jimenez, Jason Long, Bruce Eschler, Kelcey Kemp, Crystal Connors, and Jason Hoops's ("Individual Defendants") (collectively, "Defendants") Motion to Dismiss.[1] Defendants seek dismissal of all claims asserted against them by Plaintiff Dawn Alley for failure to state a claim upon which relief may be granted. For the reasons below, the court grants the Motion as to the federal claims.

## BACKGROUND[2]

---

[1] Defs.' Mot. to Dismiss, ECF No. 33, filed Feb. 3, 2026. Plaintiff has voluntarily dismissed Defendant Jason Hoops, *see* ECF No. 51, and stipulated to Defendant Jordan High School's dismissal, *see* Pl.'s Opp'n to Mot. to Dismiss ("Opp'n") 6, ECF No. 43, filed Mar. 17, 2026.

[2] The facts in this section are drawn from the Amended Complaint. *See* Pl.'s Am. Compl., ECF No. 26, filed Dec. 22, 2025. In reviewing a motion to dismiss, the court accepts all well-pleaded facts as true and views them in the light most favorable to the plaintiff. *See, e.g.*, *Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005).

This case involves the tragic death of a teenager. K.H., a Hispanic male student attending Jordan, was fatally stabbed during a fight that occurred at a convenience store and in a business' parking lot after a high school football game.[3] The fight had been planned by a group of individuals who had a "beef" with K.H. and his friends.[4] Members of the group had previously attacked K.H. on Jordan's school grounds in October—also after a football game—and in November 2023.[5] The individual who stabbed and killed K.H. is not alleged to have been a student at Jordan.

The Amended Complaint alleges that K.H.'s death was preceded by various incidences of bullying and harassment of which Defendants were aware. For example, after the earlier incident in October, Jordan received notice of the fight through a text to its vice principal and an in-person visit from K.H.'s father, yet Jordan allegedly took no action against the perpetrators.[6] After the next incident in November, some of Jordan's teachers were notified through a group text that described the altercation: "Fight was starting in F hall 1500 intersections with K.H. I stopped it from escalating but be aware after school . . . lots of swearing and egging on. The other kid started coming down the stairs to him. The baseball boys urged K.H. into my room. They are the boys that jumped him a few weeks ago at a football game."

K.H. was also verbally threatened by the same students and harassed in other incidents that Jordan allegedly documented.[7] Bullying against K.H. by these students had allegedly been going on for approximately five years prior to his death.[8] K.H.'s assailant, however, had no prior

---

[3] Am. Compl. ¶¶ 48, 50, 56.
[4] *Id.* ¶ 50.
[5] *Id.* ¶¶ 28, 32–37, 50.
[6] *Id.* ¶¶ 32–36.
[7] *Id.* ¶ 40.
[8] *Id.* ¶¶ 24–25.

history with K.H. at Canyons and allegedly had been invited to the football game by those who harassed K.H. to help attack him.[9] Police reported that a cell phone video of the fight showed that when K.H.'s assailant pulled out a knife during the fight, K.H. "backed away," but the assailant "lunged at K.H. with the knife in his right hand and stabbed K.H. in the left side of the torso."[10] The assailant then yelled, "Midvale, this is O-Town."[11] According to detectives, O-Town is a gang under the Florencia 13 gang umbrella.[12] K.H. died from the stab wound that punctured his heart's left ventricle.[13]

In August 2025, Plaintiff filed this action for herself and on behalf of the estate of K.H. against the State, Jordan, Canyons, and Individual Defendants.[14]

## STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court will dismiss an action that fails "to state a claim upon which relief can be granted."[15] "Dismissal under Rule 12(b)(6) is appropriate only if the complaint, viewed in the light most favorable to the plaintiff, lacks enough facts to state a claim to relief that is plausible on its face."[16] "In evaluating a motion to dismiss, the court must take as true all well-pleaded facts, as distinguished from conclusory allegations, view all reasonable inferences in favor of the nonmoving party, and liberally

---

[9] *Id.* ¶¶ 51–52.
[10] *Id.* ¶ 50.
[11] *Id.*
[12] *Id.*
[13] *Id.* ¶ 56.
[14] *See* Compl. 33–34, ECF No. 1, filed Aug. 18, 2025.
[15] Fed. R. Civ. P. 12(b)(6).
[16] *Abdi v. Wray*, 942 F.3d 1019, 1025 (10th Cir. 2019) (quoting *United States ex rel. Reed v. KeyPoint Gov't Sols.*, 923 F.3d 729, 764 (10th Cir. 2019)).

construe the pleadings."[17] However, a "complaint cannot rely on labels or conclusory allegations—a 'formulaic recitation of the elements of a cause of action will not do.'"[18] Instead, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[19]

## DISCUSSION

Plaintiff asserts thirteen state and federal law claims that Defendants seek to dismiss: negligence; premises liability; survival action; wrongful death; gross negligence; loss of filial consortium; negligent supervision; violation of § 1983; violation of Title VI, violation of Title IX, state civil rights violations, violation of the Utah anti-bullying statute, and vicarious liability.[20] The court first addresses the federal claims.

### I.       42 U.S.C. § 1983 Claims

Defendants argue that Plaintiff's 42 U.S.C. § 1983 ("§ 1983") equal protection claim should be dismissed because the Complaint fails to plead specific allegations against each State Defendant that establishes an equal protection violation.[21] Defendants also argue that § 1983 cannot be asserted against the State or the Individual Defendants in their official capacities because "neither a State nor its officials acting in their official capacities are 'persons' under § 1983."[22] Because state entities, municipalities, and state officials in their individual and official

---

[17] *McNellis v. Douglas Cnty. Sch. Dist.*, 116 F.4th 1122, 1131 (10th Cir. 2024) (quoting *Reznik v. inContact, Inc.*, 18 F.4th 1257, 1260 (10th Cir. 2021)) (also quoting *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002)) (cleaned up).

[18] *Greer v. Moon*, 83 F.4th 1283, 1292 (10th Cir. 2023), *cert. denied*, 144 S. Ct. 2521 (2024) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).

[19] *Ashcroft* v. *Iqbal,* 556 U.S. 662, 678 (2009).

[20] Am. Compl. ¶¶ 64–227.

[21] Mot. 10.

[22] Defs.' Reply to Opp'n ("Reply") 4, ECF No. 55, filed May 14, 2026; Mot. 10 (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)).

capacities are treated differently under § 1983, the court will consider the cause of action here according to the type of defendant.

### A.    The State

"A cause of action under section 1983 requires the deprivation of a civil right by a 'person' acting under color of state law."[23] "Neither the state, nor a governmental entity that is an arm of the state for Eleventh Amendment purposes . . . is a 'person' within the meaning of [42 U.S.C.] § 1983."[24] Consequently, the state of Utah is not subject to suit under § 1983.

### B.    Canyons School District and Individual Defendants in their Official Capacities

In contrast, "a local school district . . . and its employees acting in an official capacity are persons under § 1983" and may be subject to liability under the statute.[25] "Generally, state actors are only liable for their own acts, not for acts of private violence."[26] The Tenth Circuit, however, recognizes two exceptions to this principle: The "special relationship doctrine and state-created danger theory."[27]

First, "[t]he special relationship doctrine applies 'when the state assumes control over an individual sufficient to trigger an affirmative duty to provide protection to that individual.'"[28] Plaintiff argues there is a special relationship between students and educators without conducting

---

[23] *McLaughlin v. Bd. of Trs. of State Colls. of Colo.*, 215 F.3d 1168, 1172 (10th Cir. 2000).

[24] *Dodd v. Gottula*, No. 95-1458, 1996 WL 353792, at *2 (10th Cir. 1996) (cleaned up) (citing *Harris v. Champion*, 51 F.3d 901, 905–06 (10th Cir. 1995), *superseded by statute on other grounds as stated in Knox v. Bland*, 632 F.3d 1290, 1292 (10th Cir. 2011). *See also Thomas v. Knutson*, No. 23-7067, 2024 WL 2076315, at *3 (10th Cir. 2024) ("It has long been established states, state agencies, and state officials acting in their official capacities are not 'persons' under § 1983.").

[25] *Four Star Ranch, Inc. v. Cooper*, 2:08-cv-394, 2010 WL 3489567, at *8 (D. Utah Sept. 2, 2010). *See Stoddard v. Sch. Dist. No. 1, Lincoln Cnty., Wyo.*, 590 F.2d 829, 835 (10th Cir. 1979).

[26] *Schwartz v. Booker*, 702 F.3d 573, 579 (10th Cir. 2012) (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189 (1989)).

[27] *Id.* (citing *Liebson v. N.M. Corr. Dep't*, 73 F.3d 274, 276 (10th Cir. 1996)).

[28] *Id.* (quoting *J.W. v. Utah*, 647 F.3d 1006, 1011 (10th Cir. 2011)).

the requisite analysis of whether Canyons "restrained [K.H.'s] personal liberty" in such a way that "hindered [K.H.'s] freedom to act to protect himself from the third party."[29] Plaintiff's argument also is foreclosed by binding case law. In the Tenth Circuit, "compulsory attendance laws do not create an affirmative constitutional duty to protect students from the private actions of third parties while they attend school."[30] Rather, "this affirmative duty has been found to exist in only a few, limited situations" such as with prisoners in need of medical treatment, involuntarily committed mental patients, suspects in police custody who have been injured while being apprehended, and children placed in foster care.[31] Those circumstances are not present here. Moreover, the fact that K.H. was attacked off campus after an event he was not required to attend precludes any argument that Canyons imposed a "restraint of personal liberty" against K.H. that "engenders an individual's right to claim a corresponding affirmative duty."[32] As a result, this theory does not create an exception that would hold Canyons liable for acts of private violence against K.H.

Second, "the state-created danger theory applies when the State creates or increases a harm of private violence to an individual."[33] To establish the "danger-creation exception," a plaintiff must establish the following six elements:

> (1) the charged state actors created the danger or increased the plaintiff's vulnerability to the danger in some way; (2) the plaintiff was a member of a limited and specifically definable group; (3) the defendants' conduct put the plaintiff at substantial risk of serious, immediate, and proximate harm; (4) the risk

---

[29] *Ruiz*, 299 F.3d at 1182. *See also* Opp'n 24–25.

[30] *Maldonado v. Josey*, 975 F.2d 727, 732 (10th Cir. 1992).

[31] *Id.* at 729; *Robinson v. California*, 370 U.S. 660 (1962) (prisoners); *Youngberg v. Romeo*, 457 U.S. 307, 314–25 (1982) (mental patients); *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983) (in-custody suspects); *Yvonne L. v. N.M. Dep't of Human Servs.*, 959 F.2d 883 (10th Cir. 1992) (foster children).

[32] *Graham v. Indep. Sch. Dist. No. 1-89*, 22 F.3d 991, 994 (10th Cir. 1994).

[33] *Schwartz*, 702 F.3d at 579–80 (citing *Armijo ex rel. Chavez v. Wagon Mount Pub. Sch.*, 159 F.3d 1253, 1262–63 (10th Cir. 1998)).

was obvious or known; (5) the defendants acted recklessly in conscious disregard of that risk; and (6) the conduct, when viewed in total, shocks the conscience.[34]

"This state-created danger doctrine necessarily involves affirmative conduct on the part of the state in placing the plaintiff in danger."[35] Here, because Plaintiff fails to allege any affirmative conduct by Canyons, let alone conduct that actually created the danger or increased vulnerability, Canyons is not liable under this theory.[36] At most, Plaintiff alleges that Canyons's failure to respond to reports of threats and attacks on K.H. led to his death.[37] The Tenth Circuit rejected this argument in *Graham v. Independent School District No. I-89*, a similar case that involved the deaths of two students at the hands of classmates while on school premises.[38] Plaintiffs alleged that the school districts had failed to take appropriate measures despite being aware that the students were in danger.[39] The court held that absent a special relationship, "alleged knowledge of dangerous circumstances" is not enough to establish a constitutional claim.[40] Instead, "the state must have limited in some way the liberty of a citizen to act on his own behalf."[41] It also reiterated that "compulsory school attendance laws do not spawn an affirmative duty to protect under the Fourteenth Amendment."[42] Plaintiff's claim fails under this binding precedent.

A municipality is liable in a § 1983 action "only when the municipality itself causes the constitutional violation at issue."[43] "To prove municipal liability under § 1983," a plaintiff must

---

[34] *Ruiz v. McDonnell*, 299 F.3d 1173, 1182–83 (10th Cir. 2002).

[35] *Graham*, 22 F.3d at 995 (internal quotation marks and citation omitted).

[36] *See, e.g.*, *Ruiz*, 299 F.3d at 1183.

[37] Compl. ¶¶ 67–72.

[38] *See Graham*, 22 F.3d at 993.

[39] *See id.*

[40] *Id.* at 995.

[41] *Id.* (citation omitted).

[42] *Id.* at 994.

[43] *Canton v. Harris*, 489 U.S. 378, 387; *see also Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 397–98 (1997) (requiring the showing of a direct "causal link" between the acts of the municipality and the alleged constitutional violation).

show that Canyons "enacted or maintained a policy," that Canyons "was deliberately indifferent to the resulting constitutional violations," and that "the policy caused the underlying constitutional violation."[44] A constitutional violation "is caused by a municipal policy if it results from decisions of a duly constituted legislative body or an official whose acts may be fairly said to be those of the municipality itself."[45] For purposes of municipal liability, a policy or custom may take the form of (1) "a formal regulation or policy statement"; (2) an informal custom "amoun[ting] to 'a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law'"; (3) "the decisions of employees with final policymaking authority"; (4) "the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval"; or (5) the "failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused."[46]

Plaintiff alleges she has formal incident reports, text messages, conversations, and emails among the staff at both Mount Jordan Middle School ("Mount Jordan") and Jordan showing a widespread custom that demonstrated deliberate indifference to K.H.'s safety.[47] Even if these allegations showed a widespread custom in Canyons, Plaintiff must also show that Canyons has

---

[44] *Arnold v. City of Olathe, Kan.*, 35 F.4th 778, 795 (10th Cir. 2022) (citing *Schneider v. Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013).

[45] *Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008); *see also Bd. of Cnty. Comm'rs of Bryan Cnty.*, 520 U.S. at 404–05 ("Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee.").

[46] *Brammer-Hoelter v. Twin Peaks Charter Acad.,* 602 F.3d 1175, 1189–90 (10th Cir. 2010) (quoting *St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) and *Canton*, 489 U.S. at 388–91) (internal quotation marks omitted).

[47] Opp'n 14. Plaintiff also initially argues that "Utah's Antibullying Statute 53G-9-604 shows that there was a state governmental policy about bullying and the proper response Defendant Entities should have taken." *Id.* 12. This reference misunderstands *Monell*'s "policy" requirement.

"actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation," and that Canyons "consciously or deliberately chooses to disregard the risk of harm."[48] "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."[49] The Amended Complaint does not allege sufficient facts that Canyons has acted with deliberate indifference, however, nor does it show that Canyons had actual knowledge that its failure to respond more rigorously to reports of K.H.'s peer bullying over the last five years would lead to his tragic death at the hands of a non-student. Similarly, the alleged facts fail to establish a direct causal link between Canyons's failure to act and an off-campus fight that turned lethal through the actions of an individual who was not involved in the prior attacks against K.H. Thus, Plaintiff has not stated a plausible municipal liability claim.

Second, Plaintiff also alleges that Canyons failed to train the Individual Defendants on how to properly handle K.H.'s abuse.[50] "To recover for a failure to train," a plaintiff must show that a policy involving deficient training exists, that the policy caused the injury, and that the policy or custom was adopted "with deliberate indifference."[51] Here, this theory fails on the first element because Plaintiff has not identified a training policy that is allegedly deficient. The Amended Complaint also does not contain facts suggesting that any deficiency in training was adopted with deliberate indifference or that the training deficiency caused K.H.'s off-campus fight and death at the hand of a non-student.

---

[48] *Arnold*, 35 F.4th at 795.
[49] *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019).
[50] Opp'n 8.
[51] *Lance v. Morris*, 985 F.3d 787, 800 (10th Cir. 2021) (citing *Waller*, 932 F.3d at 1283–84).

Next, Plaintiff alleges that Canyons is liable under the theory of supervisory liability because its employees' allegedly unconstitutional conduct was approved by its supervisors.[52] "[W]hen a plaintiff sues an official under *Bivens* or § 1983 for conduct 'arising from his or her superintendent responsibilities,' the plaintiff must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well."[53] Here, Plaintiff has not alleged facts to establish a plausible claim under this theory. She has not alleged which individuals had supervisory authority, let alone alleged how such individuals committed constitutional violations or approved of such actions by their subordinates. Consequently, this theory fails as well.

For all of these reasons, the § 1983 claim against Canyons must be dismissed for failure to state a claim.

## C.    Individual Defendants in their Individual Capacities

Next, Plaintiff asserts a § 1983 claim against Individual Defendants in their individual capacities. Specifically, she argues that Individual Defendants discriminated against K.H. based on his race and gender by assuming that he was in a racial gang and that the bullying was "gang on gang" crime.[54] In response, Individual Defendants argue they are entitled to qualified immunity.[55]

"To overcome a qualified immunity defense, the plaintiff must satisfy a two-part inquiry."[56] First, "the plaintiff must establish that the defendant violated a constitutional or

---

[52] Opp'n 9.
[53] *Dodds v. Richardson*, 614 F.3d 1185, 1198 (quoting *Iqbal*, 556 U.S. at 677).
[54] Opp'n 17–20; Am. Compl. ¶¶ 116, 125–27, 130.
[55] Reply 10.
[56] *Arnold*, 35 F.4th at 788 (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).

statutory right."[57] Second, "the plaintiff must prove that the right was clearly established at the time of the defendant's conduct."[58] If the plaintiff fails to satisfy either prong, the court must grant the defendant qualified immunity.[59] On a motion to dismiss, "[t]he factual allegations must be specific and non-conclusory, and sufficient for a district court to determine that those facts, if proved, demonstrate the defendant is not entitled to qualified immunity."[60]

Plaintiff alleges that Individual Defendants violated K.H.'s equal protection rights by not properly investigating or putting an end to the harassment because he was a Hispanic male.[61] "The Equal Protection Clause of the Fourteenth Amendment guarantees that '[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws.'"[62] It "keeps governmental decision makers from treating differently persons who are in all relevant respects alike."[63] An equal protection claim requires "an act of intentional discrimination against a particular group."[64] "[C]ourts often must draw inferences about a law's intent or purpose from circumstantial evidence."[65]

Plaintiff's Amended Complaint does not allege sufficient facts to plausibly attribute discriminatory intent to the Individual Defendants. The allegations against each of the Individual Defendants are as follows: Roberto Jimenez was the principal at Mount Jordan at the relevant

---

[57] *Id.* (quoting *Cortez v. McCauley*, 478 F.3d 1108, 1114 (10th Cir. 2007).

[58] *Id.*

[59] *See Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995).

[60] *Currier v. Doran*, 242 F.3d 905, 912 (10th Cir. 2001) (cleaned up).

[61] Opp'n 15–20.

[62] *Young v. Colo. Dep't of Corr.*, 94 F.4th 1242, 1254 (10th Cir. 2024) (quoting U.S. Const. amend. XIV, § 1).

[63] *Id.* (quoting *Soskin v. Reinertson*, 353 F.3d 1242, 1247 (10th Cir. 2004)).

[64] *SECSYS, LLC v. Vigil*, 666 F.3d 678, 685 (10th Cir. 2012). *See also Lewis v. City of Ft. Collins*, 903 F.2d 752, 755 (10th Cir. 1990) (holding that to succeed on a § 1983 equal protection claim based on gender, a plaintiff "must ultimately prove the essential element of intentional discrimination").

[65] *Id.* at 686.

time, and he participated in a group chat with teachers where K.H.'s abuse was reported;[66] Jason Long was an assistant principal at Jordan during the relevant time period and witnessed at least one attack on K.H. at Jordan;[67] and Bruce Eschler and Kelsey Kemp, principals at Jordan at the relevant time period, along with Crystal Connors, an assistant principal at Mount Jordan during the relevant time, each received written complaints—either through email, statements from K.H.'s parents, or texts—about the harassment against K.H.[68] At most, these allegations establish that Individual Defendants were aware of incidents over a five-year period that involved peer bullying against K.H. However, these allegations do not plausibly show that Individual Defendants intentionally discriminated against K.H. on the basis of his race or gender. Likewise, Plaintiff's conclusory assertions that Individual Defendants failed to adequately respond to K.H.'s bullying because of their alleged stereotyped beliefs about his race and gender are inadequate to support her allegations that Individual Defendants violated K.H.'s equal protection rights. The Amended Complaint repeatedly and summarily alleges that "Defendants" held "gender stereotypes" and "racial stereotypes," but pleads no facts suggesting that "Defendants" held or acted on such views. Plaintiff has not plausibly pled an equal protection violation.[69]

## II.    Title IX Claim

"Title IX provides, as relevant here: 'No person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any

---

[66] Am. Compl. ¶¶ 5, 31.

[67] *Id.* ¶¶ 6, 30.

[68] *Id.* ¶¶ 7–9, 29.

[69] Because Plaintiff has not pled a plausible equal protection violation, the court does not consider whether Plaintiff has demonstrated that the law was clearly established.

education program or activity receiving Federal financial assistance . . . ."[70] To hold a school liable for a Title IX violation, a plaintiff must make four showings:

> (1) an appropriate person with authority to take corrective action to end the discrimination (2) had actual knowledge of discrimination in the recipient's programs but (3) failed adequately to respond in a manner amounting to deliberate indifference and (4) the harassment was so severe, pervasive and objectively offensive that it deprived the victim of access to the educational benefits or opportunities provided by the school."[71]

Here, Plaintiff argues that Defendants had actual notice of and were deliberately indifferent to K.H.'s harassment.[72] Defendants respond that Plaintiff has not alleged any facts to support a Title IX claim because the allegations fail to show that K.H. experienced sexual or gender-based harassment and that Defendants had actual knowledge of such harassment. Without alleging any facts to support the assertion, Plaintiff argues that "K.H. was verbally and physically intimidated and ridiculed because he was a male student."[73] The court must "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest" liability.[74] In other words, "[w]hile specific facts are not necessary, some facts are."[75] Accordingly, Plaintiff's general assertions of a Title IX violation are insufficient to survive a motion to dismiss.

## III.    Title VI Claim

"Title VI provides that no person shall 'be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal

---

[70] *Forth v. Laramie Cnty. Sch. Dist. No. 1*, 85 F.4th 1044, 1053 (10th Cir. 2023) (quoting 20 U.S.C. § 1681(a)).
[71] *Forth*, 85 F.4th at 1053 (cleaned up).
[72] Opp'n 27–30.
[73] Opp'n 29.
[74] *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).
[75] *Id.* at 1193 (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).

financial assistance' because of the person's race, color, or national origin.'"[76] To prevail on a Title VI claim, a plaintiff must demonstrate "that there is racial or national origin discrimination," that "the entity engaging in discrimination is receiving federal financial assistance," [77] and that the discrimination is intentional.[78] Plaintiff's Amended Complaint contains no well-pled fact allegations that Defendants took any actions involving K.H. because of his race. Conclusory allegations that "Defendants" were guided by "racial stereotypes" unsupported by any facts are insufficient. Thus, Plaintiff has not plausibly alleged that Defendants intentionally discriminated against K.H. on the basis of his race.

## IV.   State Claims

"The Tenth Circuit has explained that 'when all federal claims have been dismissed, the court may, and usually should, decline to exercise supplemental jurisdiction over any remaining state claims."[79] Having determined that Plaintiff's federal claims must be dismissed, the court declines to address the state law claims.

## V.   Conclusion

The death of K.H. was shocking. His death is alleged to be related to prior bullying by certain students at the schools he attended, as well as the allegedly insufficient response of the schools. On this motion to dismiss, the question for court is not whether these allegations are serious, but rather whether the Amended Complaint has plausibly pled a violation of the Equal

---

[76] *Al Ghareeb v. Bd. of Trs. at Univ. of N. Colo.*, 849 F. App'x 746, 748 (10th Cir. 2021) (quoting 42 U.S.C. § 2000d).

[77] *Baker v. Bd. of Regents of Kan.*, 991 F.2d 628, 631 (10th Cir. 1993).

[78] *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001).

[79] *Reyes v. N.A.R. Inc.*, 546 F. Supp. 3d 1031, 1042 (D. Utah 2021) (quoting *Smith*, 149 F.3d at 1156); 28 U.S.C. § 1367(c)(3).

Protection Clause, Title VI, or Title IX. Because it does not, the federal claims in the Amended Complaint must be dismissed.

Defendants do not meaningfully address, much less analyze, whether the dismissal should be with or without prejudice. Therefore, the federal claims will be dismissed without prejudice.

## ORDER

Accordingly, Defendants' Motion to Dismiss is GRANTED IN PART.[80] The federal claims are dismissed without prejudice. Plaintiff is granted 30 days in which to file a motion for leave to amend. If Plaintiff does not do so, the court will dismiss the case without prejudice.

Signed July 13, 2026.

BY THE COURT

_____
David Barlow
United States District Judge

---

[80] ECF No. 33.